UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:19-CV-00056-DJH

SCOTT A. HARDIN                                                            PLAINTIFF

VS.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, et al.                              DEFENDANTS

REPORT AND RECOMMENDATION

Before the Court is Plaintiff Scott A. Hardin's Motion for Attorney Fees and Costs Under the Equal Access to Justice Act. (DN 64). Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives, Matthew Whitaker, Thomas E. Brandon, and the United States of America responded in opposition (DN 68), and Plaintiff replied (DN 69). Also before the Court is Plaintiff's Objection and Motion to Strike Defendants' Notice of Recent Authority (DN 71), to which Defendants responded in opposition (DN 72), and Plaintiff did not reply. The District Judge referred this matter to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (DN 75).

I. Findings of Fact

Congress defines a "machinegun" as "any weapon which shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The definition extends to "any part designed and intended solely and exclusively . . . for converting a weapon into a machinegun[.]" *Id.* After a mass shooting in Las Vegas using a bump-stock-type device, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") began to reexamine the definition of "machinegun" and

reconsider its previous classifications of bump stocks.[1] In 2018, ATF adopted the Final Rule and reinterpreted the definition of "machinegun." *See* Bump-Stock-Type Devices, 83 Fed. Reg. 66514-01 (Dec. 26, 2018) (amending 27 C.F.R. §§ 447, 478, and 479). The Rule interpreted the term "single function of the trigger" to mean "single pull of the trigger" and analogous motions and interpreted "automatically" to mean "functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger." 83 Fed. Reg. at 66553. As a result, the Rule stated that "bump stocks . . . are 'machineguns' as defined by the National Firearms Act of 1934 and the Gun Control Act of 1968 because such devices allow a shooter of a semiautomatic firearm to initiate a continuous firing cycle with a single pull of the trigger." *Id.*

Plaintiff Scott A. Hardin ("Plaintiff") possessed three of these devices and filed this case for declaratory and injunctive relief, arguing that ATF lacked authority to issue the Final Rule and change its interpretation of "machinegun" under § 5845(b) to include bump stocks. (*Id.*). On cross-motions for judgment on the administrative record (*see* DN 29; DN 30), the District Judge sided with Defendants and concluded that ATF did not exceed its statutory authority (DN 35). The Sixth Circuit reversed that decision and remanded the matter back to this Court. (DN 42); *See Hardin v. ATF*, 65 F.4th 895 (6th Cir. 2023), c*ert. denied sub nom.*, *Garland v. Hardin*, 144 S. Ct. 2680 (2024). The case was stayed while Defendants petitioned the Supreme Court for writ of certiorari. (DN 45).

The Supreme Court ultimately addressed the dispute over ATF's authority to issue the Final Rule and extend § 5845(b)'s definition of "machinegun" to bump stocks in *Garland v. Cargill*,

---

[1] A "bump stock" is an accessory designed to "replace[] a semiautomatic rifle's stock (the back part of the rifle that rests against the shooter's shoulder) with a plastic casing that . . . helps manage the back-and-forth-motion required for bump firing[,]" a technique "for firing semiautomatic firearms at rates approaching those of some machineguns." *Garland v. Cargill*, 602 U.S. 406, 411-12 (2024).

602 U.S. 406, 415 (2024). The Supreme Court sided with the plaintiffs and found that:

> [A] semiautomatic rifle equipped with a bump stock is not a "machinegun" because it cannot fire more than one shot "by a single function of the trigger." And, even if it could, it would not do so "automatically." ATF therefore exceeded its statutory authority by issuing a Rule that classifies bump stocks as machineguns.

*Id.* at 415. The Supreme Court subsequently denied Defendants petition for writ of certiorari in this case. (DN 47); *Garland v. Hardin*, 144 S. Ct. 2680 (2024).

In light of the Supreme Court's decision in *Cargill*, this Court entered consent judgment for Plaintiff. (DN 61). Thereafter, Plaintiff filed the instant Motion for Attorney Fees and Costs Under the Equal Access to Justice Act seeking an award in excess of $300,000.00. (DN 64).

## II. Conclusions of Law

### A. Motion for Fees

The Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA" or the "Act") was promulgated "to ensure that certain individuals, partnerships, corporations … or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved." *U.S. v. Certain Land Situated in the City of Detroit*, 600 F. Supp. 2d 880, 885-86 (E.D. Mich. 2009) (citation omitted). In pursuit of that purpose, the EAJA "provides a limited exception to the general rule of sovereign immunity where recovery of costs against the United States is concerned." *Id.* It permits parties that prevail in certain civil actions against the United States to obtain an award of their fees and costs incurred in pursuit of that action. *Id.*; 28 U.S.C. § 2412. Of particular importance in the present case is § 2412(d), which provides as follows:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

3

28. U.S.C. § 2412(d)(1)(A).

A "party", as defined by the Act, includes individuals "whose net worth did not exceed $2,000,000 at the time the civil action was filed[.]" § 2412(d)(2)(B). "[W]ithin thirty days of final judgment in the action," the party seeking to obtain such an award must submit an application to the Court showing his or her compliance with and eligibility under the Act, including an itemized statement of the fees sought. *Id.* at (d)(1)(B). The burden is then shifted to the government to avoid payment of such fees by showing that its position was substantially justified or that special circumstances otherwise make an award unjust. *Caremore, Inc. v. N.L.R.B.*, 150 F.3d 628, 629 (6th Cir. 1998); *see also Pickering v. Mukasey*, 306 F. App'x 246, 248 (6th Cir. 2009).

<u>1. Eligibility and Compliance with EAJA</u>

Plaintiff demonstrates that he is a prevailing party, acted in compliance with the EAJA's procedural requirements, and is eligible to request a fee award under § 2412(d). Plaintiff instigated this suit seeking judicial review of agency action. (*See* DN 1). He filed the instant Motion within thirty days of the entry of consent judgment in his favor. (*See* DN 61; DN 64). He properly avers that he is the prevailing party by way of that consent judgment (DN 64, at PageID # 968-69; *see* DN 61; DN 64-1; DN 64-2) and provides his sworn declaration stating that at no point in time, including when he initiated this action, has his net worth exceeded $2,000,000 (DN 64-3). Plaintiff provides itemized statements from his counsel of record specifying the nature and amount of time expended and hourly rates. (DN 64-4; DN 64-5). He alleges that Defendants' position was not substantially justified. (DN 64, at PageID # 969-74). And to the extent he seeks fees beyond the $125 hourly rate imposed under the EAJA to account for an increased cost of living and fee enhancement, he avers as such and submits evidence and arguments in support of his position. (*See*

DN 64, at PageID # 976-86; DN 64-6; DN 64-7; DN 64-8; DN 64-9; DN 64 -10). In full, Plaintiff seeks a fee award of $342,793.86. (DN 64-11).

Defendants appear to concede that Plaintiff complied with the EAJA's procedural requirements and are a prevailing party eligible under the Act. They dispute the fee award, however, on the ground that their position was substantially justified and that even if the Court concludes their position was not, Plaintiff is not entitled to a fee increase and "any fee award should be limited to the statutory maximum rate" of $125 per hour. (DN 68, at PageID # 1095-1101). Thus, a question remains: while Plaintiff may be eligible to pursue such an award, is he entitled to it?

2. Substantial Justification

Plaintiff's ability to recover under the EAJA hinges on this Court's finding as to whether Defendants' position in this litigation was substantially justified and presents a threshold inquiry for the Court's consideration.

An eligible party may recover fees under § 2412(d)(1)(A) unless (1) the position advanced by the United States was "substantially justified[,]" or (2) special circumstances otherwise make an award unjust. When presented with a question of whether the government's position was substantially justified, "[t]he government bears the burden of proving substantial justification." *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021) (citing *DeLong v. Comm'r of Soc. Sec.,* 748 F.3d 723, 726 (6th Cir. 2014)). Substantial justification in this context does not require a "high degree" of justification for the government's position, the position need only be "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 563-569 (1988). Thus, the government must show that a "'genuine dispute' existed over the question at issue in the litigation." *Gun Owners of America, Inc. v. Bondi*, 168 F.4th 813, 820-21

5

(6th Cir. 2026) (quoting *Pierce*, 487 U.S. at 565-66).

To bolster this standard, courts are presented with several factors to consider in determining whether the government's position was substantially justified. "[T]he actual merits of the [g]overnment's [] position" is the most important factor but "'objective indicia' of reasonableness—such as a dissenting opinion, the views of other courts, 'a string of losses', or a 'string of successes'—may be relevant" as well. *Griffith*, 987 F.3d at 563-64 (quoting *United States ex rel. Wall v. Circle C Constr., LLC,* 868 F.3d 466, 471 (6th Cir. 2017) (quoting *Pierce*, 487 U.S. at 569)). Moreover, courts must be cautious in their assessment to avoid the influence of hindsight. *Id.* (quoting *Taucher v. Brown-Hruska,* 396 F.3d 1168, 1173 (D.C. Cir. 2005)). "For that reason, [courts] distinguish between cases in which the government lost because it vainly pressed a position flatly at odds with the controlling case law and cases in which the government lost because an unsettled question was resolved unfavorably." *Id.* (quotations omitted). In conducting this analysis, courts must also consider the government's position as a whole, encompassing "its arguments made during litigation as well as its pre-litigation conduct." *Id.* (citing *EEOC v. Memphis Health Ctr.*, 526 F. App'x 607, 614 (6th Cir. 2013)).

Plaintiff argues that Defendants' position lacked substantial justification and points to the following in support: (1) the Supreme Court explicitly held that ATF exceeded its statutory authority by classifying bump stocks as machineguns; (2) the sudden change in classification was inconsistent with ATF's past interpretations; (3) ATF's position is logically inconsistent; (4) ATF's position defies and abandons express statutory text; and (5) ATF's position places policy preferences over statutory text. (DN 64, at PageID # 969-74).

In opposition, Defendants submit that Plaintiff's reliance on the Supreme Court's ruling in *Cargill* is misplaced. (DN 68, at PageID # 1095-97). Rather, Defendants argue, "the history of this

6

case and broader litigation on the issue" reflect numerous favorable judicial decisions based on their position and demonstrate that their position was substantially justified. (*Id.*). Moreover, the mere fact that ATF changed its position over time, Defendants submit, does not undermine the reasonableness of their position and arguments in support. (*Id.* at PageID # 1097-98).

In reply, Plaintiff submits that just because some lower courts "failed to grasp the unchanged engineering of non-mechanical bumpstocks" does not mean that Defendants' position was substantially justified. (DN 69, at PageID # 1107). Beyond that, Plaintiff argues, the Supreme Court's ruling in *Cargill* "was the functional equivalent of finding lack of substantial justification" for Defendants' position. (*Id.* at PageID # 1106). Plaintiff claims that Defendants' response to his Motion fails to satisfy the heavy burden of explaining how asserting a power that ATF did not possess could have a reasonable basis in law. (*Id.*).

We are not the only court in this Circuit faced with the question of whether the government's position in the litigation that followed ATF's Final Rule was substantially justified. *See Gun Owners of America, Inc. v. Garland*, No. 1:18-cv-1479, 2025 WL 920671 (W.D. Mich. Jan. 23, 2025), *aff'd sub nom*, *Gun Owners of America, Inc. v. Bondi*, 168 F.4th 813 (6th Cir. 2026). In *Gun Owners*, the Western District of Michigan answered the question in the affirmative, and summarized its decision as follows:

> The government has established that its position in this litigation had substantial justification. Congress had not defined the key phrases that underlie this dispute. At the time ATF promulgated the Final Rule, the proper interpretation of the word machinegun remained unsettled as to its application to bump stocks. The government's interpretation of single function of the trigger and automatically had some basis in earlier court opinions. The Sixth Circuit has found that the government's position was viable and reasonable. And, prior to its opinion in *Cargill*, the Supreme Court had denied four petitions for writs of certiorari where the circuit court found that the government's position was reasonable. Viewed in this context, the Supreme Court's rejection of the government's interpretation in *Cargill* does not render the government's position unjustified for the purpose of EAJA fees. A reasonable person would think the government's position had a basis

7

in law and fact.

2025 WL 920671, at *8.[2]

The Sixth Circuit unanimously affirmed the Western District of Michigan's decision on appeal. 168 F.4th 813 (6th Cir. 2026). While the Court recognized the deference afforded to the district court's substantial justification finding, it found that the district court reasonably held (1) a reasonable person could have found the government's position correct on the merits, (2) a reasonable person could have found the government's position correct from a broader perspective, noting the "debate centered less on statutory text and more on interpretive philosophy[,]" (3) a reasonable person could have found the government's position correct because of the novel question presented, and (4) objective indicia supported the reasonableness of the government's position. *Id.* at 821-24. The Court went further and turned to its prior decision rendered in this case where the Court recognized "this bump-stock question as 'a close one on which reasonable jurists have disagreed[.]'" *Id.* at 825 (quoting *Hardin*, 65 F. 4th at 897). This Court conducted its own review and agrees with its sister court's analysis in *Gun Owners*.

When ATF issued the Final Rule, the definitions of "automatically" and "single function of the trigger" remained unsettled and were not clearly defined by Congress or the ATF itself. ATF expressly acknowledged as much in the Rule, recognizing its own rulings lacked "extensive legal analysis of the statutory terms 'automatically' or 'single function of the trigger.'" 83 Fed. Reg. at 66516. This lack of clarity surrounding the terms interpreted in the Final Rule, while not definitive, lends support to a finding of substantial justification. *Hartmann v. Stone*, 156 F.3d 1229, at *3 (6th

---

[2] Outside the Sixth Circuit, it appears that only one other district court has confronted a dispute over whether the government's position in connection with ATF's Final Rule and the litigation that followed was substantially justified. *See Codrea v. ATF*, No. 18-cv-03086 (DLF), 2025 WL 2144078 (D.D.C. July 29, 2025). Similar to the Western District of Michigan in *Gun Owners*, the District Court for the District of Columbia determined that it was and denied plaintiff's motion for fees under the EAJA. *Id.*

Cir. 1998) (recognizing the lack of "clarity [in] the underlying law at the time the government took its position" supports claim to substantial justification).

Turning to the interpretations themselves, ATF found some support in prior case law. For example, in *Staples v. United States*, 511 U.S. 600 (1984), the defendant challenged his criminal conviction for possession of an improperly registered firearm, arguing the government needed to prove that he knew his weapon, a semiautomatic weapon modified to fire automatically, fell within § 5845(b)'s definition of machinegun. There, the Supreme Court used "the terms "automatic" and "fully automatic" [to] refer to a weapon that fires repeatedly with a single pull of the trigger. That is, [the Court explained,] once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." 511 U.S. at 602 n. 1. And in *Akins v. United States*, No. 8:08-cv-988-T-26TGW, 2008 WL 11455059 (M.D. Fla. Sep. 23, 2008), *aff'd* 312 F. App'x 197 (11th Cir. 2009), *cert. denied*, 557 U.S. 942 (2009), the Middle District of Florida determined that ATF reasonably interpreted § 5845(b)'s definition of "machinegun" to equate a "single function of the trigger" to a "single pull of the trigger." *Id.* at *4-8. The Eleventh Circuit affirmed that decision and found that ATF's interpretation was "consonant with the statute and its legislative history." 312 F. App'x at 200. The authority in support of the government's position lends to the reasonableness of that position and further supports a finding of substantial justification. *See Hartmann*, 156 F.3d at *3 (noting "court must examine the extent to which the government's position comported with the applicable law").

The litigation that ensued in the wake of ATF's Final Rule also offers objective indicia of reasonableness to support Defendants' substantial justification claim. A number of courts declined to issue a preliminary injunction at the outset of litigation, finding that plaintiffs did not demonstrate a likelihood of success on the merits and recognized ATF's interpretation of the terms

in § 5845(b)'s definition of "machinegun" was reasonable. *See, e.g.*, *Gun Owners of America v. Barr*, 363 F. Supp. 3d 823 (W.D. Mich. 2019); *Guedes v. ATF*, 356 F. Supp. 3d 109 (D.D.C. 2019); *Aposhian v. Barr*, 374 F. Supp. 3d 1145 (D. Utah 2019). Some of those denials went on to be affirmed by their respective circuit courts and petitioned to the Supreme Court, where the Court denied the plaintiffs' petitions. *See, e.g.*, *Guedes v. ATF*, 356 F. Supp. 3d 109 (D.D.C. 2019), *aff'd* 920 F.3d 1 (D.C. Cir. 2019), *cert. denied* 206 S. Ct. 789 (2020); *Aposhian v. Barr*, 374 F. Supp. 3d 1145 (D. Utah 2019), *aff'd*, 958 F.3d 969 (10th Cir. 2020), *cert. denied*, 143 S. Ct. 84 (2022). While the issue was ultimately resolved in plaintiffs' favor, the history of the litigation over this debate suggests that the government's position was not one that was "vainly pressed" or "flatly at odds with the controlling case law[.]" *Griffith*, 987 F.3d at 563-64. As the Sixth Circuit stated assessing the merits of this very case, "there can be no doubt that a significant number of reasonable jurists have reached diametrically opposed conclusions as to whether the definition of a machinegun includes a bump stock." *Hardin v. ATF*, 65 F.4th 895, 898 (6th Cir. 2023), *cert. denied sub nom.*, *Garland v. Hardin*, 144 S. Ct. 2680 (2024).

Plaintiff's arguments do not persuade this Court otherwise. Plaintiff argues that the Supreme Court's decision in *Cargill* rejecting the government's position supports finding that position not substantially justified. (DN 64, at PageID # 970-71). Yet, while *Cargill*'s rejection of the government's position supports Plaintiff to some extent, "[a] position can be justified even though it is not correct." *Elfelt v. U.S.*, 149 F. App'x 402, 409 (6th Cir. 2005) (citing *Pierce*, 487 U.S. at 569)). As explained above, the Court concludes that the government's position had substantial justification. That the government's position was ultimately wrong does not render that position unreasonable or unjustified.

Plaintiff next contends that ATF's change in position, which he claims was based on

10

political pressure and not law or fact, suggests the government's position lacks substantial justification. (DN 64, at PageID # 971). Yet, as the Western District of Michigan explained in *Gun Owners*, ATF's "shift in position, by itself, provides little support for the conclusion that the government's position did not enjoy substantial justification." *Gun Owners*, 2025 WL 920671, at *5. "Courts must focus on the justification offered by the agency for the new policy and not the fact that the agency changed its position." *Id.* (citing *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) (collecting cases)). While ATF indeed acknowledged the pressure to reexamine the definition of machinegun after the Las Vegas shooting, ATF pointed to the lack of "extensive legal analysis" on "automatically" and "single function of the trigger," in support of promulgating the Final Rule. 83 Fed. Reg. at 66516-18. Plaintiff does not explain how ATF's justification based on the lack of clarity in the law means the government's position was not substantially justified. On the contrary, as recognized above, such circumstance supports a claim of substantial justification.

Plaintiff next argues that the government lacked substantial justification because its interpretation of "single function of the trigger" was logically inconsistent, and its interpretation of "automatically" defies the word's express definition. (DN 64, at PageID # 971-73). Plaintiff also points to the government's reliance on policy preferences and the presumption against ineffectiveness over statutory text. (*Id.* at PageID # 973-74). In support of these arguments, Plaintiff directs the Court exclusively to the Supreme Court's findings in *Cargill*. (*Id.* at PageID # 971-74). The Court will not, however, surrender to the influence of hindsight in its assessment of substantial justification. "The relevant question is 'not what the law now is, but what the [agency] was substantially justified in believing it to have been.'" *Codrea v. ATF*, No. 18-cv-03086 (DLF), 2025 WL 2144078, at *5 (D.D.C. July 29, 2025) (quoting *Pierce*, 487 U.S. at 561). This dispute

11

centered around a question of statutory interpretation. As outlined above, at the time the government pursued its position it offered authority in support that could lead a reasonable person to conclude that position was correct. Indeed, the "split among the Courts of Appeals" *Cargill*, 602 U.S. at 415, over the validity of the government's position confirms that even though the Supreme Court ultimately took issue with that position on a number of grounds, it was nevertheless justified at the time it was pursued.

A review of the merits of the government's position and objective indicia of reasonableness reveal that the government's position was substantially justified, despite being ultimately rejected by the Supreme Court in *Cargill*. A reasonable person could have found Defendants' position correct on the merits, evidenced by the authority provided in support of that position and the genuine dispute over § 5845(b)'s application to bump stocks that ensued. As Defendants met their burden in demonstrating their position was substantially justified, Plaintiff is not entitled to fees under § 2412(d)(1)(A) of the EAJA. Accordingly, the undersigned recommends that Plaintiff's Motion for Fees (DN 64) is denied.

### B. Motion to Strike

After the Parties completed briefing on Plaintiff's Motion for Attorney Fees, Defendants filed a Notice of Recent Authority (DN 71). In the paragraph long filing, Defendants notified the Court of a recent decision in *David Codrea et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives et al.*, No. 18-cv-03086 (DLF), 2025 WL 2144078 (D.D.C. July 29, 2025). (*Id.*). Defendants stated that the case offered "further support" for their position and that the Defendants' substantially justified position in that case "was similar to [their] position" here. (*Id.*).  In *Codrea*, Defendants explained, the District Court for the District of Colombia denied plaintiff's motions for attorneys' fees under the EAJA upon finding that "numerous closely split panel and en banc

12

decisions from courts of appeals across the country" offered "particularly persuasive evidence of substantial justification" for the position that bump stocks met the definition of "machinegun" under 26 U.S.C. § 5845(b). (*Id.*).

Plaintiff filed a Motion to Strike Defendants' Notice, arguing the Notice violates Federal Rules of Civil Procedure 6(b)(1)(B) and 12(f) because it was filed after Defendants' time to respond to Plaintiff's Motion for Fees expired, and because the *Codrea* case is irrelevant to the resolution of Plaintiff's Motion. (DN 71). For the reasons explained below, the undersigned recommends that Plaintiff's Motion to Strike be denied.

The Court interprets Defendants' Notice of Recent Authority as a motion for leave to file a surreply. *See, e.g.*, *General Elec. Co. v. Latin Am. Imports, S.A.*, 187 F. Supp. 2d 749, 752 n. 1 (W.D. Ky. 2001) (interpreting plaintiff's notice of filing supplemental authority as motion for leave to file a surreply, noting "[i]n the future, the parties in this case will confine themselves to the motion practice contemplated by the local rules—the filing of motions, memoranda, responses, and replies."). Neither the Federal nor the Local Rules expressly provide for filing a surreply and, accordingly, do not provide a specified length of time within which such a reply must be filed. Nor does Plaintiff provide support for his position that Defendants' Notice of Recent Authority is subject to the time limitations imposed under Rule 6(b)(1)(B).

Moreover, at the time Defendants filed their response to Plaintiff's Motion for Fees, the *Codrea* decision had not yet been issued. Defendants filed their response on April 22, 2025, the *Codrea* decision was issued on July 29, 2025, and Defendants promptly filed their Notice of Recent Authority on August 15, 2025. Courts within this circuit have recognized that filing a notice of authority under such circumstances, to apprise the Court of authority that was not available during the applicable briefing period, may be appropriate. *See Williams v. Mentor Worldwide LLC*, No.

4:18CV0899, 2019 WL 4750843, at *1 n. 1 (N.D. Ohio Sep. 30, 2019) (considering defendant's notice of authority, explaining that if "pertinent and significant authorities come to a party's attention after" briefing, "a party may promptly advise the Court by filing a Notice of Supplemental Authorities that sets forth the citation(s)"); *England v. Advance Stores Co., Inc.*, No. 1:07CV-174-R, 2009 WL 10681546, at *3 (W.D. Ky. June 4, 2009) ("A surreply also may be appropriately considered when adequate consideration of a newly rendered or cited case requires it."); *see, e.g.*, *Blair*, 2020 WL 1172715, at *4-5 (denying motion to strike defendant's notice of authority apprising court of decision issued after briefing); *see also*, *CC Metals & Alloys, LLC v. Am. Int'l Specialty Lines Ins. Co.*, No. 5:22-CV-055-CHB, 2022 WL 17253648, at *2-3 (W.D. Ky. Nov. 28, 2022) (finding sur-reply appropriate and fair to allow party to address new evidence of apparent relevance to the underlying motion). Accepting Defendants' Notice of Recent Authority seems entirely appropriate given the prompt filing of such Notice after the *Codrea* decision issued and Defendants inability to offer *Codrea* in support of its response to Plaintiff's Motion for Fees because the *Codrea* decision issued three months after Defendants' response was due and filed.

Next, Defendants' Notice of Recent Authority is not a pleading subject to Rule 12(f). *See, e.g.*, *Blair v. Johnson & Johnson*, No. 3:19-cv-333-DJH-RSE, 2020 WL 1172715, at * 4-5 (W.D. Ky. Mar. 11, 2020) (finding defendants' notice of supplemental authority was not a pleading subject to Rule 12(f)). Even if it were, Defendants' Notice does not present "redundant, immaterial, impertinent, or scandalous" material properly subject to a Rule 12(f) motion to strike. Fed. R. Civ. P. 12(f). "[T]he action of striking a pleading should be sparingly used[,]" only resorted to "when required for the purposes of justice and the pleading to be stricken has no possible relation to the controversy." *Seeman v. Copeland*, No. 5:20-cv-00027, 2021 WL 354424, at *1 (W.D. Ky. Feb. 2, 2021) (quoting *Anderson v. United States*, 39 F. App'x 132, 135 (6th Cir. 2002) (citation

14

omitted)). This case does not present such circumstances. Defendants apprised the Court of a decision issued after the Parties completed briefing on Plaintiff's Motion for Fees while Plaintiff's Motion remained pending before this Court. And while Plaintiff is correct that the District Court for the District of Columbia's decision in *Codrea* is not binding, its relation to the present controversy is obvious. The decision reflects another district court's ruling on the same controversy now before this Court: whether the Defendants' position advanced in support of ATF's decision to classify bump stocks as machineguns under 26 U.S.C. § 5845(b) was substantially justified.

Finally, striking Defendants' Notice at this juncture would have little practical effect, the Court is aware of the authority presented therein. As for Defendants' "arguments" contained in its paragraph long Notice, they are of little prejudice. First, "[t]he Court would have found and considered the . . . case regardless of Defendants' notice . . . and 'the Court is capable of reviewing the authorities and assigning them the appropriate weight based on the facts of the case.'" *Blair*, 2020 WL 1172715, at *5 (quoting *Smith v. Stellar Recovery, Inc.*, No. 15-cv-11717, 2017 WL 1336075, at *8 (E.D. Mich. Feb. 7, 2017)). Beyond that, Plaintiff utilized his Motion to Strike to provide extensive argument distinguishing *Codrea*, emphasizing how it is inapplicable and irrelevant to this case, and critiquing the District Court for the District of Columbia's analysis, balancing any alleged prejudice resulting from Defendants' cursory arguments included in its Notice of Recent Authority.

Accordingly, the undersigned recommends that Plaintiff's Motion to Strike Defendants' Notice of Recent Authority (DN 71) is denied.

15

## RECOMMENDATION

For the reasons provided above, the Magistrate Judge, having made findings of fact and conclusions of law, **RECOMMENDS** that Plaintiff Scott A. Hardin's Motion for Attorney Fees and Costs Under the Equal Access to Justice Act (DN 64) be **DENIED.**

The Magistrate Judge **FURTHER RECOMMENDS** that Plaintiff's Motion to Strike Defendants' Notice of Recent Authority (DN 71) be **DENIED.**

Regina S. Edwards, Magistrate Judge
United States District Court

July 28, 2026

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. Fed.R.Civ.P. 72(b)(2). If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 150-51, 106 S. Ct. 466, 88 L.Ed.2d 435 (1985).

Copies:        Counsel of Record

16